UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:21-CV-11230-DPW

MICHAEL DEVINE,

      Plaintiff

v.

TOWN OF HULL, TOWN OF HULL
SCHOOL COMMITTEE, DAVID
TWOMBLY, STEPHANIE PETERS,
JENNIFER FLEMING, LUCAS
PATENAUDE, and ERIC HIPP, each in their
capacity as members of the Town of Hull
School Committee,

      Defendants

PLAINTIFF'S RESPONSES TO
DEFENDANTS' STATEMENT OF
MATERIAL FACTS

DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF FACTS WITH PLAINTIFF'S
RESPONSES:

1. Plaintiff Michael Devine ("Plaintiff" or "Devine") was employed as the Principal of

    Hull High School from July 2009 to August 1, 2017. Exhibit 1 - Complaint ¶ 5;

    Exhibit 2 - Plaintiff's Deposition Transcript at pp. 12-13.

    **Plaintiff's Response:** Not Disputed.

2. Prior to his employment with Hull Public Schools, Plaintiff was previously employed

    for six years as an Assistant Principal of Norwell High School. Exhibit 2, pp. 10-11.

    **Plaintiff's Response:** Not Disputed.

3. On August 2, 2017, the School Committee appointed Plaintiff to be Superintendent of the Hull Public Schools. Exhibit 1, ¶ 5; Exhibit 3 – 2017 Agreement Between the Hull School Committee and the Superintendent of Schools.

   **Plaintiff's Response:** Not Disputed.


4. The School Committee extended the term of Plaintiff's contract on September 18, 2019. All five (5) Members of the School Committee voted to extend Plaintiff's contract. Exhibit 1, ¶ 6; Exhibit 4 – 2019 Agreement Between the Hull School Committee and the Superintendent of Schools; Exhibit 2, p. 151.

   **Plaintiff's Response:** Not disputed as to the assertions contained in the first sentence. The exhibits cited do not support the assertions set forth in the second sentence.


5. Section 15 of the 2017 Agreement Between the Hull School Committee and the Superintendent of Schools ("2017 Contract") and Section 16 of the 2019 Agreement Between the Hull School Committee and the Superintendent of Schools ("2019 Contract"), allowed the School Committee to terminate Plaintiff's employment when cause existed, provided that the Plaintiff was informed in writing of the basis for his proposed discharge and had been given an opportunity for a meeting before the Committee prior to official action being taken. "For cause" was defined in the Contract as "termination for any grounds put forth by the Committee that are not arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the operation of the school system." Exhibit 3, ¶¶ 15A 1-3; Exhibit 4, ¶¶ 16A 1 – 3.

   **Plaintiff's Response:** Not disputed that the Contracts contain this language.

6. Plaintiff executed the 2017 Contract and at the time of execution reviewed and understood Section 15 of the Contract. Exhibit 2, pp. 15.

   **Plaintiff's Response:** Not disputed that Plaintiff executed the 2017 Contract. The Exhibit cited does not support the remaining assertion.

7. Andrea Centerrino is a School Adjustment Counsel at Hull High School. She has held that position since 2004. Exhibit 5 – Andrea Centerrino Deposition Transcript, pp. 11-12.

   **Plaintiff's Response:** Not disputed that Andrea Centerrino is a school social worker at HHS and has held that position since 2004.

8. RH is a former student of Hull High School. He graduated from Hull High School in June 2017. Exhibit 6 – Ryan Hauter Deposition Transcript, p. 11.

   **Plaintiff's Response:** Not Disputed.

9. While RH was a student at Hull High School, he was living independently in a rooming house, and did not have family contact for some time. RH had a very unstable family life while a high school student. He had significant issues of being estranged from his parents. Exhibit 2, pp. 21-26; Exhibit 5, pp. 15-16; Exhibit 6, pp. 21, 26, 30-31.

   **Plaintiff's Response:** Disputed as to the assertion set forth in the first sentence. Exhibit 6, pp. 30:2-17, 31:17-24.

10. While RH was a student at Hull High School, the Student Assistant Team assigned Plaintiff to work with him. RH had an internship in Plaintiff's office. RH would also come to Plaintiff's office other times during the day. Exhibit 2, pp. 20-27; Exhibit 6, pp. 28-30, 36.

**Plaintiff's Response:** Not disputed that the Student Assistance Team assigned Devine to work with RH as it related to the internship, further answering that the internship began in the Fall of 2016/2017. Exhibit 2, pp. 26:18-27:1. Disputed as to the remaining assertions. Exhibit 2, pp. 27:2-8, 27:15-17; Exhibit 6, pp. 28:9-20, 36:5-10.

11. After RH graduated from Hull High School, he met with Plaintiff in his office twice in the fall of 2017. By that time, Plaintiff had been appointed to the Superintendent's position. During one of those meetings, RH was visibly shaken and teary. Plaintiff was concerned for his mental health. Plaintiff gave RH his cell phone number as the best way for RH to contact him. Exhibit 2, pp. 33-36, 40, 43-44. Exhibit 7 – Text Message from Plaintiff to RH dated November 18, 2017.

**Plaintiff's Response:** Disputed as to the date of the meetings and as to the order of events. Exhibit 7 is an email and not a text message was sent in response to an email RH sent to Devine requesting to meet with him. This email was sent prior to RH visiting Devine. The meetings did not both take place in the Fall of 2017. Exhibit 2, pp. 33:12-34:15, 42:14-43:9, 43:17-44:10; Exhibit 6, p. 44:12-20; Exhibit 26, p.19.

12. After RH graduated from High School, Ms. Centerrino communicated with RH about his mental health, family issues and occasionally suicidal thoughts. Exhibit 5, pp. 20-20-22.

   **Plaintiff's Response:** Not disputed but further answering that the Exhibit cited states that Centerrino spoke to RH "mostly" about "family issues, relationship issues and occasional suicidal thoughts". The topics are not exhaustive. Exhibit 5, pp. 22:6-8, 24:5-20, 25:2-8.

13. Plaintiff learned at some point that RH had moved to Florida. Plaintiff spoke with RH by telephone while Plaintiff lived in Florida. During those phone calls, RH raised concerns about his mental health. Exhibit 2, pp. 51, 52; Exhibit 6, p. 93-95.

   **Plaintiff's Response:** Not disputed.

14. Plaintiff learned from Ms. Centerrino that RH had tried to commit suicide. After receiving treatment for his suicide attempt, RH reached out to Plaintiff. Plaintiff continued to stay in touch with RH following his suicide attempt. Exhibit 2, pp. 52-54.

   **Plaintiff's Response:** Disputed as to the assertion set forth in the first sentence. Exhibit 2, p. 52:3-9. Not disputed as to the remaining assertions, except that communications were usually initiated by RH. Exhibit 2, p. 73, 6-10; Exhibit 6, pp. 40:23-42:21.

15. During Plaintiff's telephone conversations with RH after his suicide attempt, RH told Plaintiff that he looked up to him, and that Plaintiff was a father figure to him. Exhibit 2, pp. 54-55.

   **Plaintiff's Response:** Not disputed that RH told Plaintiff that he looked up to him and that Plaintiff was a father figure to him. Disputed as to the plurality of "telephone conversations" as the cited Exhibit does not support the assertion.

16. In September 2019 following his suicide attempt, RH and Plaintiff had the following text exchange:

| | |
|---|---|
| RH | Point is, you can't make me uncomfortable |
| Plaintiff | You don't think? |
| RH | Highly unlikely |
| Plaintiff | Really? |
| RH | Yeah |
| Plaintiff | So. . ., Have you ever thought about us in a different way? |
| RH | I haven't, I'm sorry that doesn't change anything though |

   . . . .

The text exchange continued in part:

| | |
|---|---|
| RH | Hahahah my thinking was "my former principal just came on to me" hahahaha |
| Plaintiff | No he didn't! Well . . . |

Exhibit 8 – Text Exchange September 2019.

   **Plaintiff's Response:** Disputed. Exhibit 2, pp. 62:8-22; Exhibit 8.

17. Plaintiff continued the text exchange with RH, writing in part:

| Plaintiff | You've now seen my vulnerable side |
| RH | You've seen mine so we're even now |
| Plaintiff | But mine is really bad. So pissed at myself. Sorry. |
| . . . . | |
| RH | It's Okay |
| Plaintiff | No it's not. |
| RH | How so |
| Plaintiff | Crossed the line. |
| . . . | |

Exhibit 8.

**Plaintiff's Response:** While the first text message is inaccurate as stated here, not disputed that Exhibit 8 contains such text messages.

18. On September 18, 2019, RH contacted Ms. Centerrino and told her that Plaintiff had sent him texts that seemed sexual in nature and that he was confused and upset and felt betrayed. Exhibit 5, pp. 28-30.

**Plaintiff's Response:** Disputed. The cited exhibit does not support the assertion set forth herein. Exhibit 5, pp. 28:22-29:2; Exhibit 26, pp. 12, 20.

19. Ms. Centerrino was concerned because of RH's reaction to the text messages and because she knew he had a suicide attempt in the prior two weeks which is why RH had reached out to her and Plaintiff at that time. Exhibit 5, pp. 32-35.

**Plaintiff's Response:** Not disputed that Centerrino testified at her deposition to the above, however, Plaintiff is unable to comment upon Centerrino's feelings.

20. Because of her concern for RH's stability and reaction not the situation, Ms. Centerinno contacted Nicole Nosek, the Principal of Hull High School at the time. Ms. Centerinno told Ms. Nosek that she was concerned about a faculty member and some texts that were sent to a former student that was making the former student very uncomfortable, that the former student was fragile and that she was worried that he was suicidal. Exhibit 5, pp. 35-36.

    **Plaintiff's Response:** Disputed as to the reason Centerrino contacted Ms. Nosek. Exhibit 26, pp.20, 23-24.

21. Ms. Centerinno met with Plaintiff a couple days after the text exchange between Plaintiff and RH at Ms. Nosek's request. Ms. Centerrino told Plaintiff that she was aware of his text exchange with RH, that the text messages appeared inappropriate and were perceived by RH to be, and told Plaintiff that RH was distraught by them. During the conversation, Plaintiff told Ms. Centerrino that he had crossed the line. Exhibit 2, p. 68, 71-73; Exhibit 5, pp. 53-56.

    **Plaintiff's Response:** Disputed. Exhibit 2, pp. 71:15-72:17; Exhibit 26, pp. 22-24.

22. In January 2020, RH sent Plaintiff a text message in which he wrote in part:

    RH      I'm so f---ing mad at you. You literally ruined our relationship.  . . . why would you ever think it would go unnoticed to ask me what you asked me.  . . .

The lack of restraint and the lack of judgment on your end is appalling. And it also leaves me wondering, when did you start thinking that way about me? When I was 17?

Exhibit 9 – RH Text Message to Plaintiff..

**Plaintiff's Response:** Not disputed that Exhibit 9, in part, contains the statements set forth above.

23. In January 2020 RH sent Plaintiff a text in which RH basically said resign or I'm going public. Exhibit 2, pp. 73-74.

**Plaintiff's Response:** Not Disputed.

24. After RH sent Plaintiff the January 2020 text in which he said resign or he would go public, Plaintiff learned that RH had tried to commit suicide a second time in December 2019. Exhibit 2, pp. 73-74.

**Plaintiff's Response:** Not disputed.

25. After RH sent Plaintiff the January 2020 text saying resign or be fired, Plaintiff called RH. Plaintiff decided to have a conversation with RH after he received the text saying resign or he would go public. Plaintiff chose not to contact anyone at Hull Public Schools to let them know about the text exchange with RH. Exhibit 2, pp. 74-76.

**Plaintiff's Response:** Not disputed but further answering that Plaintiff did not report his communications he had with RH to anyone from the Hull Public Schools because RH was not a Hull Public School Student. Exhibit 2, p. 74:2-20.

26. After RH blocked Plaintiff's phone number and RH did not respond to Plaintiff's calls, Plaintiff reached out to RH on Facebook Messenger. Exhibit 10 – Facebook Messenger.

    **Plaintiff's Response:** Not Disputed that Devine sent RH a message on Facebook but disputed as to the remaining assertions as the cited Exhibit does not support the assertions set forth herein.

27. On Monday, January 20, 2020, RH reached out to School Committee Member Jennifer Fleming via Facebook. When Ms. Fleming called RH, he told her about his attendance at Hull High School, his relationship with Plaintiff and how that had soured and that he was very upset by Plaintiff having changed the tenor of their conversations to a sexual nature. RH told Ms. Fleming that when he blocked Plaintiff from his phone, Plaintiff then reached out to him via Facebook and another form of social media. Exhibit 11 – Jennifer Fleming Deposition Transcript, pp. 9, 11-20.

    **Plaintiff's Response:** Disputed. Exhibit 6, pp. 110:23-111:19; Exhibit 26, p. 15-16

28. Ms. Fleming had serious concerns about Plaintiff after speaking with RH and reviewing the text exchange that RH had forwarded to her. Ms. Fleming contacted the Chair of the School Committee David Twombly the next day to let him know

about her conversation with RH and the text messages.  Exhibit 11, pp. 11-12, 20; Exhibit 12 – David Twombly Deposition Transcript, pp. 16-17.

**Plaintiff's Response:**  Not disputed that Fleming contacted Twombly.  Disputed as the remaining assertions.  Exhibit 11, pp. 11:3-10, 15:16-20.

29. Mr. Twombly told Ms. Fleming to contact Ms. Centerrino to get more information about RH because Mr. Twombly did not know if the stuff was true or false and he did not want to jump to conclusions. Exhibit 12, pp, 17-18, 28.

**Plaintiff's Response:**  Not Disputed.

30. Mr. Twombly subsequently contacted School Counsel Michael Maccaro. Mr. Maccaro arranged to meet with RH. Ms. Fleming did not attend the meeting in person. She attended the meeting via telephone.  The purpose of the meeting with RH was to obtain facts from RH about his allegations against Plaintiff. Exhibit 11, pp. 24.

**Plaintiff's Response:**  Disputed.  The cited Exhibit does not support the assertions set forth herein.

31. On Sunday, January 26, 2020, Mr. Twombly informed Plaintiff that he needed to meet with him and Attorney Maccaro in Plaintiff's office the following day. Mr. Twombly did not tell Plaintiff what the meeting was about.  Exhibit 2, pp. 77-78.

**Plaintiff's Response:**  Not Disputed.

32. Plaintiff texted Assistant Superintendent Judith Kuehn after he spoke with Mr. Twombly on Sunday, January 26, 2020, and told her that he was to have a meeting in the morning regarding a personnel matter.  Ms. Kuehn then called Plaintiff  and told him to call Mr. Twombly to see if the meeting was really about Plaintiff. When Plaintiff called Ms. Kuehn back, Plaintiff asked her if she had heard anything about his engaging in any inappropriate behavior towards a former student.   When Ms. Kuehn told Plaintiff that she had not, Plaintiff proceeded to tell her about the allegations that had been made by RH.  Exhibit 2, pp. 79-80; Exhibit 13– Judith Kuehn Deposition Transcript, pp. 14-15, 25.

    **Plaintiff's Response:** Disputed as to the timings of the conversations.  Exhibit 2, pp.79:8-80:18; Exhibit 26, p. 29.


33. On Monday, January 27, 2020, Plaintiff met with Attorney Maccaro, Ms. Fleming and Mr. Twombly in Plaintiff's office.  During the meeting, Mr. Twombly told Plaintiff that an allegation had been brought forward against him about inappropriate communications he had with a former student.  Mr. Twombly recommended that Plaintiff get counsel and suggested that he take a couple of days off. Exhibit 2, pp. 82-83; Exhibit 12, pp. 31-32; Exhibit 11, pp. 79-81.

    **Plaintiff's Response:**  Disputed, further answering that Maccaro said that an allegation had been made against Devine and that the teachers had encouraged the student to report it to the School Committee.  Twombly stated something along the lines of "we're concerned about the reputation of the school and the school district".

Maccaro then suggested to Devine that he take some personal time.  Exhibit 2, pp.82:16-83:4; Exhibit 12, p. 31:5-24

34. During the meeting between Plaintiff, Mr. Twombly and Ms. Fleming, Plaintiff was apologetic, contrite, and acknowledged that he had "f---ed up."  Exhibit 11, pp. 79, 90.

    **Plaintiff's Response:**  Disputed.  Exhibit 2, pp.82:16-83:7; Exhibit 12, p. 31:5-24; Exhibit 26, pp.15-17.

35. On January 29, 2020, the School Committee held a meeting in executive session to discuss the allegations made against Plaintiff.  Plaintiff attended the executive session with his Counsel Michael Long.  Exhibit 2, pp. 91-92.

    **Plaintiff's Response:**  Not Disputed.

36. Prior to the January 29, 2020, meeting Plaintiff contacted all five (5) members of the School Committee. Exhibit 2, pp. 92-96; Exhibit 14–Stephanie Peters Deposition Transcript, pp. 41-44.

    **Plaintiff's Response:**  Not Disputed.

37. During the School Committee's January 29, 2020, meeting, Plaintiff apologized to the School Committee for creating the situation.   After several School Committee Members spoke, Plaintiff accused the School Committee of being homophobic, telling them that the decision of the School Committee was motivated by

homophobia, that if the situation were between and male and female it would have been handled differently. Exhibit 2, pp. 96, 97; Exhibit 15, pp. 34-35; Exhibit 14, pp. 42.

**Plaintiff's Response:** Disputed as to the first sentence as the cited exhibits do not support such assertion. Disputed that Devine called the School Committee homophobic but not disputed as to the remaining assertions. Exhibit 2, pp. 97:5-98-10.

38. In response to Plaintiff accusing the School Committee of being homophobic, Mr. Patenaude stated that as a gay man he was extremely offended and said something along the lines that Mr. Devine was giving the gay cause a bad name. Exhibit 2, pp. 96, 97; Exhibit 15, pp. 34-35; Exhibit 14, pp. 42.

**Plaintiff's Response:** Disputed that Devine accused the School Committee of being homophobic. Exhibit 2, pp. 97:5-98-10. The cited Exhibits 2 and 15 do not support the assertion set forth herein.

39. Mr. Patenaude found Plaintiff's statement that the School Committee's decision was motivated by homophobia as someone who identifies as gay, to be insulting. Mr. Patenaude was offended that someone would use his sexually immediately as a defense. The issue for Mr. Patenaude was not Plaintiff's sexuality, but that Plaintiff used his sexuality as a cop out. Exhibit 15, pp. 35-36, 41.

**Plaintiff's Response:** Plaintiff is not able to comment upon Mr. Patenaude's subjective interpretations and beliefs regarding a disputed statement by Plaintiff.

40. In response to Plaintiff's statement that the School Committee's decision was motivated by homophobia, Ms. Peters and Ms. Fleming stated that if Plaintiff's contact was with a young woman, they would be as outraged if not more. For Ms. Peters it came down to the vulnerability of the victim and the power that Plaintiff holds over a former student as Superintendent.  Ms. Peters made her statement because she has daughters and because of her concerns about her daughters being put in a situation by an older man. Exhibit 14, pp. 48-52.

    **Plaintiff's Response:** Disputed as to the first sentence as the cited Exhibit does not support the assertion set forth therein.  Plaintiff is unable to comment on the subjective beliefs of Ms. Peters or the reasons as to why she made asserted statements.


41. At the School Committee's meeting on January 29, 2020, Plaintiff through his counsel offered to tender his resignation.  On February 3, 2020, Plaintiff executed a Separation Agreement and General Release of Claims. Exhibit 2, pp. 108-110, 113; Exhibit 14, p. 27.

    **Plaintiff's Response:**  Disputed as the cited Exhibits do not support the assertions stated herein.


42. On February 3, 2020, before the Chair of the School Committee executed the Separation Agreement, the Superintendent and Chair of the School Committee

learned from the media, that there may be other allegations about Plaintiff's conduct from another former student. Exhibit 14, pp. 30-35.

**Plaintiff's Response:** Disputed as the cited Exhibit does not support the assertion set forth herein and in fact, states that the email received from Timothy Delfarro was received on February 4, 2020 and a further email received on February 5, 2020. Further, Plaintiff refers to Exhibit 21.

43. On February 3, 2020, Plaintiff was placed on paid administrative leave. School Counsel notified Plaintiff's Counsel at the time that the School Committee would be meeting in executive session on February 5, 2020 to discuss a complaint against Plaintiff. Exhibit 17 – Letter dated February 3, 2020 from Attorney Maccaro to Attorney Long.

**Plaintiff's Response:** Not Disputed, however, the cited exhibit does not support the assertion that Plaintiff was placed on administrative leave on February 3, 2020.

44. Acting Superintendent Kuehn, notified the Police Chief about the allegations being made about Plaintiff. Exhibit 13, pp. 60-65.

**Plaintiff's Response:** Disputed as the cited Exhibit does not support the assertion set forth herein. Further responding that Kuehn notified the Police Chief that she "intend[ed] to engage [Guilfoil's] services to conduct an administrative review of the matter", despite knowing that there were no criminal allegations. Exhibit 13, pp. 59:21-63:16; Exhibit 34.

45. John Guilfoil the Principal of Guilfoil Public Relations LLC ("Guilfoil") who had a contract with the School District, suggested that the School Department notify the Town of Hull Police Chief of the allegations.  Acting Superintendent Kuehn, notified the Police Chief for the Town of Hull about the allegations that had been made against Plaintiff. Exhibit 18 - John Guilfoil Deposition Transcript, pp. 9-10, 19, 124-128, 132-134; Exhibit 13, pp. 59-64.

    **Plaintiff's Response:**  Not Disputed that John Guilfoil is the Principal of Guilfoil Public Relations.  Disputed as to the remaining assertions as it was suggested by Guilfoil, and undertaken by Keuhn, that the Chief of Police should be notified that Defendants intended to engage Guilfoil's services to conduct an administrative review of the matter.  Exhibit 13, pp. 59:21-63:16; Exhibit 34.

46. The Acting Superintendent, in consultation with the Chair of the School Committee and School Counsel contracted with Guilfoil to conduct an investigation into the allegations made against Plaintiff. Exhibit 13, pp. 32-37; Exhibit 18,  pp. 41-42, 48, 110; Exhibit 19 – Scope of Work Proposal Prepared for Hull Public Schools dated February 3, 2020.

    **Plaintiff's Response:**  Not Disputed that Kuehn, as Superintendent, contracted with Guilfoil to conduct an "administrative review of the conduct of Superintendent Michael F. Devine".

47. Guilfoil hired retired Arlington Police Chief Frederick Ryan and retired Massachusetts State Police Captain Greg Foley to conduct the investigation. Exhibit 18, pp. 48, 51-53, 54-55, 58-61, 99-100-102, 108.

   **Plaintiff's Response:** Disputed. Guilfoil did not hire Ryan to conduct the investigation. Ryan's role was limited to serving as a conduit between Guilfoil and Foley. Exhibit 30, pp. 75:21-76:8.

48. On February 3, 2020, Mr. Twombly as Chair of the School Committee, posted a statement to the Hull School Community. The statement was drafted by an employee of Guilfoil and sent to School Counsel prior to it being sent out. Exhibit 20 – February 3, 2020 Letter; Exhibit 18, pp. 118-120.

   **Plaintiff's Response:** Not Disputed and further answering that the same content was posted to Guilfoil's website. Exhibit 51.

49. In the early morning of February 5, 2020, Ms. Peters received an email from a former student of Norwell High School about the Plaintiff. In his second email to Ms. Peters, the former student told Ms. Peters that he had sent her a story about Plaintiff the previous day, but that she chose to keep Plaintiff on paid leave. The former student stated that he would be going to the local media and telling them this fact, ending the email "good luck." Ms. Peters informed School Counsel and the Chair of the School Committee about the email. Exhibit 14, pp. 31-34. Exhibit 21– Email from Tim Delfaro.

   **Plaintiff's Response:** Not disputed.

50. On February 5, 2020, the School Committee convened in executive session to discuss complaints against Plaintiff. Plaintiff through his Counsel was notified of the meeting. Plaintiff's Counsel attended the meeting on Plaintiff's behalf. Plaintiff did not attend the meeting. During the February 5, 2020 meeting, the Town Manager who was present at the School Committee meeting received a link to the website Turtleboy that contained former Norwell student, Timothy Delfarro's allegations against Plaintiff. Exhibit 22– Turtleboy posting; Exhibit 14, pp. 30-35.

**Plaintiff's Response:** Disputed. The cited Exhibits do not support the assertions set forth herein and in fact state that Stephanie Peters received the message from Timothy Delfarro on February 5, 2020.

51. Mr. Twombly, issued a second statement to the Hull School Committee on February 5, 2020. Exhibit 23– February 5, 2020 Statement.

**Plaintiff's Response:** Not disputed.

52. On March 26, 2020, Plaintiff through his Counsel received notice that the Hull School Committee had scheduled an executive session meeting under M.G.L. c. 30A, § 21(a)(1) for Monday, March 30, 2020, the purposes of which was to discuss a complaint against Plaintiff. Exhibit 24 – Letter dated March 26, 2020.

**Plaintiff's Response:** Not disputed.

53. At the School Committee's March 30, 2020, executive session meeting, Investigator Greg Foley summarized the findings of his investigation. Members of the School Committee reviewed the Investigation Report.  Exhibit 25– March 30, 2022 Executive Session Meeting Notice; Exhibit 26– Investigation Report; Exhibit 14, pp. 39-41.

**Plaintiff's Response:**  Not disputed as to the assertion set forth in the first sentence. Disputed as to the second sentence.  Exhibit 26; Exhibit 41.

54. Mr. Foley believed that Plaintiff's behavior towards the former student was unethical. Mr. Foley concluded that Plaintiff was grooming the former student and that Plaintiff's conduct violated the School's sexual harassment policy.  Exhibit 30 – Deposition Transcript of Gregory J. Foley, Sr., pp. 48, 95-96, 113-118.

**Plaintiff's Response:**  Plaintiff is unable to comment on Foley's subjective belief set forth in the first sentence.  Disputed as to the remaining allegations, further answering that Foley believed the "grooming" of Hauter by Devine commenced in September 2019 when Hauter was an adult.  In addition, Foley testified that the sexual harassment policy attached to the AR is about sexual harassment in the workplace and Devine's communication with Hauter in September 2019 did not occur in the workplace.  Exhibit 30, pp. 96:5-17, 114:20-155:1, 119:16-24, 120:16-22, 126:22-127:6.

55. On April 13, 2020, Plaintiff through his Counsel, was provided with ten-day notice of intent to terminate his employment in accordance with his employment agreement.

Attached to the email was an unredacted copy of the investigator's report. Hard copies of the documents were also mailed to Plaintiff's Counsel. Exhibit 27 - Letter dated April 13, 2020 from Attorney Maccaro to Attorney Long.

**Plaintiff's Response:** Not Disputed.

56. On April 28, 2020, the Plaintiff met with the School Committee in executive session. He was represented by new Counsel. At the meeting, Plaintiff was given the opportunity to speak and to provide information to the School Committee as to why the School Committee should not terminate his employment as Superintendent. Plaintiff's Counsel spoke on Plaintiff's behalf. Exhibit 2, pp. 123-128.

**Plaintiff's Response:** Not Disputed, however, Counsel for Devine were prevented from asking questions of the School Committee and it was made clear by Maccaro that the Executive Session was "not an administrative hearing", it was simply "a meeting that [was] being held pursuant to Mike Devine's employment contract". Furthermore, the evidence supporting the charges against Devine was withheld from him and his Counsel. In addition, Counsel for Devine requested clarification as to the manner in which the meeting was going to be conducted, but was not provided with a substantive response. Exhibit 28; Exhibit 40; Exhibit 50; Exhibit 54.

57. The School Committee voted 5-0 to terminate Plaintiff's employment as superintendent of HPS for cause effective April 29, 2020. By letter dated April 29, 2020, Plaintiff was given Notice of the School Committee's Vote to terminate his

employment and the reasons for termination.  Exhibit 28 – Letter dated April 29, 2020.

**Plaintiff's Response:**  Not Disputed.


58. Ms. Fleming voted to terminate Plaintiff's employment based on the language contained in Plaintiff's employment contract and on Plaintiff's conduct as described in the investigation report.  Ms. Fleming believed that Plaintiff's conduct was unbecoming and that Hull Public School policies governed Plaintiff's conduct with the former student because Plaintiff was still employed by the Hull Public Schools at the time and was subject to the policies.  Exhibit 11, pp. 94, 96-100, 105-105.

**Plaintiff's Response:**  Disputed. Further answering that Plaintiff is unable to comment on Ms. Fleming's subjective beliefs.  Exhibit 27, Exhibit 54.


59. Ms. Peters voted to terminate Plaintiff's employment in part because Plaintiff told the School Committee in executive session that he knew he couldn't be employed by Hull Public Schools anymore and do the job of Superintendent.  Ms. Peters did not believe that an administrator should be communicating with former students in the context that Plaintiff had communicated with R.H.  Ms. Peters did not believe that the context of Plaintiff's communication with R.H. was appropriate.  Through the investigation, Ms. Peters knew that RH was vulnerable and what kind of position he was in. Exhibit 14, pp. 27-28, 42-46, 50-53.

**Plaintiff's Response:**  Disputed. Further answering that Plaintiff is unable to comment on Ms. Peter's subjective beliefs.  Exhibit 27, Exhibit 54.

60. Mr. Twombly voted to terminate Plaintiff because he believed Plaintiff was unprofessional and used poor judgment and based on the cumulative information he learned about RH's mental health and Plaintiff's work with RH. Plaintiff was acutely aware of Plaintiff's mental health issues. Exhibit 12, pp. 20-22, 33-34.

**Plaintiff's Response:** Disputed. Further answering that Plaintiff is unable to comment on Mr. Twombly's subjective beliefs. Exhibit 27, Exhibit 54.


61. Mr. Hipp voted to terminate Plaintiff's employment 's based on the totality of what he heard during the executive sessions of the School Committee involving Plaintiff as well as what he read in the investigation report. Exhibit 29 - Eric Hipp Deposition Transcript, pp. 12-13.

**Plaintiff's Response:** Disputed. Exhibit 27, Exhibit 54.


62. Mr. Patenaude voted to terminate Plaintiff's employment in part because of the text messages. Mr. Patenaude believed that the texts were inappropriate and based on the relationship that had been formed while RH was a student at Hull High School, that RH looked up to Plaintiff not only as an educator, but as a parental figure. Mr. Patenaude believed that Plaintiff took advantage of that. Exhibit 15, pp. 15-22, 24-25, 52-54.

**Plaintiff's Response:** Disputed. Further answering that Plaintiff is unable to comment on Mr. Patenaude's subjective beliefs. Exhibit 27, Exhibit 54.

Respectfully submitted,
Plaintiff, Michael Devine,
By His Counsel,


/s/ India L. Minchoff                          /s/ Stephen J. Kuzma
India L. Minchoff, Esq. (652456)              Stephen J. Kuzma, Esq. (547522)
Emma S. Funnell, Esq. (704217)               343 Commercial Street
Law Offices of Russo & Minchoff              Boston, MA 02109
210 Union Wharf                              Telephone (781) 929-2250
Boston, MA 02109                             SJKuzmalaw@gmail.com
Telephone (617) 740-7340
india@russominchofflaw.com
emma@russominchofflaw.com


## CERTIFICATE OF SERVICE

I, Emma S. Funnell, hereby certify that on March 9, 2023, a copy of the foregoing document was served upon counsel of record, Deborah Ecker, Esq., by email.

/s/ Emma S. Funnell
Emma S. Funnell